**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>COMPUCREDIT CORPORATION,<br>and JEFFERSON CAPITAL<br>SYSTEMS, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 1:08-cv-01976-BBM-RGV<br>)<br>)  ORAL ARGUMENT REQUESTED<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF COMPUCREDIT'S MOTION TO DISMISS**

Pat A. Cipollone
Daniel T. Donovan
Rebecca R. Anzidei
Michael F. Williams
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Tel: (202) 879-5000
Fax: (202) 879-5200

Michael J. Bowers
BALCH & BINGHAM LLP
30 Ivan Allen, Jr. Boulevard, N.W., Suite 700
Atlanta, GA 30308
Tel: (404) 261-6020
Fax: (404) 261-3656

Jeffrey O. Bramlett
Michael B. Terry
Sarah M. Shalf
BONDURANT, MIXSON & ELMORE, LLP
1201 W. Peachtree Street, N.W., Suite 3900
Atlanta, GA  30309
Tel: (404) 881-4100

Dated July 21, 2008                    Fax: (404) 881-4111

***Attorneys for Defendant CompuCredit Corporation***

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................i

TABLE OF AUTHORITIES............................................................................................ii

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND ............................................................................................................ 7

    A.    Regulation By The Federal Deposit Insurance Corporation. ................. 8

    B.    The Credit Card Products Issued By The Bank. .................................... 11

LEGAL STANDARDS ON A MOTION TO DISMISS ............................................. 15

ARGUMENT ............................................................................................................... 16

I.    UNDER § 5 OF THE FTC ACT AND THE BANK SERVICES COMPANY ACT, THE FTC LACKS AUTHORITY TO ASSERT CLAIMS REGARDING BANKS' CREDIT CARD SOLICITATIONS........ 17

    A.    The FTC Lacks Jurisdiction In This Case................................................ 17

    B.    The FTC's Own Administrative Law Judge Has Held That, Under The Terms Of The BSCA, The FTC Lacks Jurisdiction Over Bank Service Providers. .................................................................. 20

II.    UNDER THE FINANCIAL INSTITUTION SUPERVISORY ACT, THE COURT LACKS JURISDICTION OVER THE FTC'S CLAIMS. ...... 24

    A.    Section 1818(i)(1) Precludes The Court From Affecting The Issuance Or Enforcement Of A Notice Or Order By The FDIC. ......... 24

    B.    The FTC Would Require The Court "To Affect" The FDIC's Proceedings Against CompuCredit And The Banks............................. 27

III.    THIS LAWSUIT WOULD LEAD TO FUNDAMENTAL UNFAIRNESS IN THIS CASE AND HAVE DISRUPTIVE CONSEQUENCES FOR THE REGULATION OF THE ENTIRE BANKING SYSTEM. .................................................................................. 30

CONCLUSION ............................................................................................................35

# TABLE OF AUTHORITIES

**Cases**

*Badier v. Gonzalez*,
    475 F. Supp. 2d 1294 (N.D. Ga. 2006)............................................................16

*Bd. of Governors of the Fed. Reserve Sys. v. DLG Fin. Corp.*,
    29 F.3d 993 (5th Cir. 1994) ..........................................................................29

*Bd. of Governors of the Fed. Reserve Sys. v. Mcorp Fin., Inc.*,
    502 U.S. 32 (1991).......................................................................................28

*First Nat'l Bank of Scotia v. United States*,
    530 F. Supp. 162 (D.D.C. 1982)....................................................................28

*FTC v. Am. Standard Credit Sys., Inc.*,
    874 F. Supp. 1080 (C.D. Ca. 1994) ........................................................ 23, 24

*Groos Nat'l Bank v. Comptroller of the Currency*,
    573 F.2d 889 (5th Cir. 1978) ........................................................................33

*Henry v. Office of Thrift Supervision*,
    43 F.3d 507 (10th Cir. 1994) ........................................................................28

*Hindes v. FDIC*,
    137 F.3d 148 (3d Cir. 1998) .........................................................................29

*In re Dillard Dep't Stores, Inc.*,
    Docket No. 9269, 1995 FTC Lexis 62 (Mar. 16, 1995) ............... 4, 22, 23, 24

*Lawrence v. Dunbar*,
    919 F.2d 1525 (11th Cir. 1990) ....................................................................17

*Leuthe v. Office of Fin. Inst. Adjudication*,
    977 F. Supp. 357 (E.D. Pa. 1997)........................................................... 28, 33

*M'Culloch v. Maryland*,
    17 U.S. (4 Wheat.) 316 (1819) .....................................................................17

*Minnesota v. Fleet Mortgage Corp.*,
        181 F. Supp. 2d 995 (D. Minn. 2001) ............................................... 23, 24, 25

*Morrison v. Allstate Indem. Co.*,
        228 F.3d 1255 (11th Cir. 2000) ....................................................................16

*Nat'l Fed'n of the Blind v. FTC*,
        303 F. Supp. 2d 707 (D. Md. 2004)...............................................................21

*Scarfo v. Ginsberg*,
        175 F.3d 957 (11th Cir. 1990) ......................................................................17

*Sinclair v. Hawke*,
        314 F.3d 934 (8th Cir. 2003) ........................................................................17

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
        303 U.S. 283 (1938)......................................................................................16

*T.C. Hurst & Son v. FTC*,
        268 F. 874 (E.D. Va. 1920) ..........................................................................21

*The Broad. Team, Inc. v. FTC*,
        429 F. Supp. 2d 1292 (M.D. Fla. 2006) ........................................................21

*United States v. Philadelphia Nat'l Bank*,
        374 U.S. 321 (1963)......................................................................................21

**Statutes**

12 U.S.C. § 1818................................................................................... *passim*

12 U.S.C. § 1818(i)(1) .......................................................................... *passim*

12 U.S.C. § 1861 ...............................................................................................4

12 U.S.C. § 1867(c) ..................................................................................... 4, 19

15 U.S.C. § 1601(a) ........................................................................................10

15 U.S.C. § 1632(c) ........................................................................................10

15 U.S.C. § 1637(c)(1)(A) ...............................................................................10

15 U.S.C. § 1637(c)(1)(A)(ii)(1).................................................................................10

15 U.S.C. § 45(a) ........................................................................................... passim

15 U.S.C. § 45(a)(2).................................................................................... 3, 18, 21

15 U.S.C. § 57a(f)(1) ...................................................................................................10

Pub. L. No. 106-102, 1113 Stat. 1383, Title I § 133(a) (1999) ...............................25

**Other Authorities**

Black's Law Dictionary (8th Ed. 2004)......................................................................31

Frederic J. Bendiemer, *Applicability of Section 5 of the FTC Act to Nat'l
    Banks*, 22 ANN. REV. OF BANKING & FIN. L. 189, 190 (2003).......................20

**Rules**

12 C.F.R. § 225(a)(1) .................................................................................................11

12 C.F.R. § 226.5a(2)(i) ..............................................................................................11

16 C.F.R. §§ 310 .........................................................................................................24

65 Fed. Reg. 58903-01 (Oct. 3, 2000) ......................................................................11

73 Fed. Reg. 28904 (May 19, 2008) ..........................................................................26

**PRELIMINARY STATEMENT**

This lawsuit by the Federal Trade Commission ("FTC") seeks to establish the FTC as a federal banking regulator. However, in filing this suit the agency attempts an action that Congress has expressly forbidden and asks this Court for authority that Congress has refused to give. The FTC itself does not dispute this central purpose: its case challenges solicitations for credit cards issued *by banks*, and seeks restitution of fees *charged by banks* to credit card accounts owned *by banks*. More than that, the FTC seeks to do so in a case where the FDIC—the relevant federal banking regulator—already has ongoing administrative proceedings covering the same issues presented by the FTC's Complaint. But the FTC cannot lawfully ask this Court to supplant the FDIC's administrative process and instead proceed at the same time, with essentially the same case, in federal court. Far from allowing federal courts to replace the administrative processes of the banking agencies, Congress expressly divested courts of jurisdiction in cases such as this.

Tellingly, the FTC has not sued the banks that issued the credit cards even though it is seeking restitution for their solicitations, their credit cards, and their accounts. The agency has not done so, even though these banks would obviously be necessary parties to the FTC's attempted suit, because it knows it cannot. The

FTC is expressly precluded from doing so under the Federal Trade Commission Act ("FTC Act"), the very statute on which the FTC bases this case.  Even the FTC concedes, as it must, that its authority does not extend to the activities of banks.

Instead, the FTC tries to become a banking regulator through the back door: by suing CompuCredit, a service provider that performed certain functions on behalf of banks, attempting to use CompuCredit as a vehicle to seek restitution for the activities of the banks.  But the FTC cannot explain why activities performed by banks that the agency admits it cannot regulate, suddenly become subject to its full regulatory authority simply because a bank chooses—as banks commonly do—to delegate these activities to a service provider.  Indeed, *the FTC's own Administrative Law Judge has already ruled that the agency does not have authority to bring a case such as this.*  Separately, Congress has ensured in 12 U.S.C. § 1818(i)(1)—an clear statute often relied upon by federal banking regulators themselves—*that courts are expressly divested of jurisdiction in cases such as this.*  This principle has been relied upon by banking regulators, uniformly accepted by the courts, and confirmed by the Supreme Court of the United States. Therefore, as forth below, CompuCredit respectfully asks this Court to dismiss the FTC's unprecedented complaint for several independent reasons.

2

***First, the FTC does not have the statutory authority to bring this case***. Congress has vested exclusive jurisdiction over banks and their activities in the federal banking regulators, not the FTC.  From the beginning, banks and banking activities have been excluded from the FTC's jurisdiction under express provisions of the FTC Act.  *See* 15 U.S.C. § 45(a)(2).  Throughout history, Congress has entrusted the regulation of banking activities exclusively to the federal banking agencies, including the Federal Deposit Insurance Corporation ("FDIC"), the Office of the Comptroller of the Currency, the Office of Thrift Supervision, and the Board of Governors of the Federal Reserve System.  This congressionally-mandated regulatory structure is longstanding, comprehensive, sophisticated, and exclusive.  As a result, banking activities are among the most closely regulated and comprehensively supervised business activities in the United States.

In this case, the FTC admits that if the very same activities it seeks to regulate here were performed by banks themselves, it would have no jurisdiction over the activities.  Yet the FTC has never explained how (or why) it can achieve the very same result—jurisdiction over these activities—simply because they are performed on behalf of a bank by a service provider.  It cannot be that a bank's decision to enlist the aid of a service provider somehow confers jurisdiction over activities that the FTC concededly cannot otherwise regulate.

3

Importantly, the FTC's own Administrative Law Judge has correctly determined that the FTC lacks jurisdiction to enforce § 5 with regard to banking activities, even when delegated to a service provider. *See In re Dillard Dep't Stores, Inc.*, Docket No. 9269, 1995 FTC Lexis 62 (Mar. 16, 1995). This interpretation makes sense: as expressly acknowledged in the FTC Act itself, Congress vested banking regulators—not the FTC—with exclusive authority to enforce § 5 in the banking context. In reaching this correct conclusion, the Administrative Law Judge relied on a plain reading of the Bank Service Company Act, 12 U.S.C. §§ 1861 *et seq.* (the "BSCA"), in which Congress expressly declared that activities performed on behalf of banks by non-bank service providers "shall be subject to regulation" by the same banking authority as "if such services were being performed by the [bank] itself." 12 U.S.C. § 1867(c). Therefore, the FTC cannot lawfully establish itself as a banking regulator by simply asserting authority over the activities of a bank when they are delegated by contract to a service provider.

*Second,* dismissal of the FTC's case is also compelled because this Court is divested of jurisdiction in this case by 12 U.S.C. § 1818, the statute by which Congress established the comprehensive regulatory regime governing banking. Indeed, the FDIC invokes this statute as the basis for its own authority to bring the

4

administrative cases in this matter.  But in the statute, Congress also specifically divested courts of jurisdiction "to affect … the issuance or enforcement of any notice or order" a federal banking agency might promulgate pursuant to its statutory enforcement authority under §1818. *See* 12 U.S.C. §1818(i)(1).   To be sure, this is the type of case that strikes at the heart of what Congress enacted § 1818(i)(1) to prevent.  The FTC not only agrees that this case will "affect" the FDIC's proceedings, but essentially asks the Court to hear and decide the same case that the FDIC brought and is currently pending before the Administrative Law Judge.

The FTC unabashedly admits that its case raises the identical § 5 issues as the cases brought by the FDIC in its administrative proceedings.  The FTC agrees that this case concerns the same allegations, the same legal and factual issues, the same credit card accounts, the same solicitations, the same consumers, and seeks the same restitution as the FDIC administrative cases.   The FTC's case is completely redundant of the FDIC's own administrative actions, which were brought against the banks that issued the credit card solicitations challenged here, as well as against CompuCredit.  By definition and design, then, this case will not only "affect" the FDIC's ongoing administrative proceedings, but will interfere with and displace them.  It is therefore clearly prohibited by § 1818(i)(1).

***Third***, the fundamental unfairness and disruptive consequences of these competing cases for the parties, for interested third parties, for the banking system, for the Administrative Law Judge hearing this case, and for this Court itself, only serve to powerfully confirm why Congress did not give the FTC authority to bring this case and divested this Court of jurisdiction over it.  Indeed, to prove this point the Court need look no further than the complicated morass the FTC's unauthorized parallel litigation would create when any attempt to coordinate between the competing cases is made.  In addition, the untenable consequences of this competing litigation will be starkly illustrated when the Judges in the competing forums are asked make separate determinations concerning such matters as procedural rules, discovery issues, necessary parties (and related jurisdictional issues), evidentiary questions, applicable legal standards, and findings of fact, not to mention what legal force decisions in one forum will have in the other, which decisions will ultimately control and the appropriate process for appellate review.  This bizarre redundancy of proceedings will raise the significant risk of conflicting decisions at every step along the way.  Such duplicative and unauthorized proceedings would also raise serious due process concerns.

Apart from this conflict and complexity in coordinating the competing cases, this case implicates very important legal and policy questions regarding the

6

appropriate regulation of the credit card programs of banks.  The FTC not only seeks to significantly expand its jurisdiction, but is also pushing a novel legal theory that contradicts all existing banking law, and detailed regulations promulgated by the banking regulators pursuant to express congressional mandate. Specifically, the FTC cannot and does not dispute that all of the statements contained in challenged credit card materials were at all times truthful, contained all required information, and included all of the robust disclosures of fees and other terms precisely in the manner required by the Truth in Lending Act ("TILA") and Regulation Z.  Yet the FTC now claims that the exact fee disclosures designed and mandated by banking regulators somehow violated § 5.  This flawed, novel theory underscores the jurisdictional hurdles the FTC faces here.

The FTC cannot conscript this Court into becoming a vehicle for fundamentally altering the congressionally-mandated system of federal banking regulation.  This Court cannot transform the FTC into a banking regulator— particularly one determined to turn banking law regarding credit card disclosures on its head.  The Court should thus dismiss the FTC's claims against CompuCredit.

## BACKGROUND

CompuCredit is a specialty finance company that works with banks and other institutions to facilitate access to credit for financially underserved

consumers. Since its founding, CompuCredit has been committed to helping provide much-needed opportunities to consumers who may have been otherwise excluded from basic financial services. To accomplish this purpose, CompuCredit acts as a contractor to banks who issue credit cards to consumers. Pursuant to contracts with the banks, CompuCredit provides various services on behalf of banks, including marketing, administration, and customer service for the banks' credit card accounts. (*See* Compl. ¶ 11.) Pursuant to these contracts, CompuCredit also purchases the receivables from these accounts on a daily basis. (*See id.* ¶ 12.) The banks own the credit card accounts and charge the consumers fees. (*See id.* ¶ 13.) The banks are also responsible for reviewing and approving the contractual services that CompuCredit provides on their behalf. (*See id.*)

### A.   Regulation By The Federal Deposit Insurance Corporation.

The FDIC is the federal agency with regulatory authority over the banks whose credit card programs are the subject of the FTC's Complaint. (*See id.* ¶ 12.) Under a comprehensive regime established by Congress, the FDIC regulates banks to ensure safety and soundness and compliance with applicable laws. The FDIC accomplishes these objectives through bank examinations, site visits, document requests, and enforcement proceedings. The FDIC is empowered to enforce the applicable laws, including consumer protection laws such as § 5 of the FTC Act,

8

the Truth in Lending Act ("TILA"), and Regulation Z.  The FDIC and the other federal banking agencies "each have affirmed their authority under section 8 of the Federal Deposit Insurance Act to take appropriate action when unfair or deceptive acts or practices are discovered."  FDIC FIL-26-2004 (Mar. 11, 2004).

One of the mechanisms by which the FDIC enforces consumer protection laws like TILA, Regulation Z and § 5 is through its Consumer Response Center. The FDIC's Consumer Response Center was created as a result of amendments to the FTC Act that required the FDIC to "establish a separate division of consumer affairs, which shall receive and take appropriate action upon complaints with respect to [unfair or deceptive] acts or practices by banks …." 15 U.S.C. § 57a(f)(1).   The FDIC's Consumer Response Center assists consumers with complaints by informing them of their rights under federal consumer protection laws and by reviewing a bank's actions to assess whether the bank has complied with such rules.

The laws for which the Consumer Response Center reviews for compliance include TILA, which was enacted to "assure a meaningful disclosure of credit terms … and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a).  Through TILA and its amendments, Congress set out specific standards and requirements that apply to

credit card disclosures.  For instance, TILA requires that direct-mail credit card solicitations disclose "[a]ny annual fee, other periodic fee or membership fee imposed for the issuance or availability of a credit card."    15 U.S.C. § 1637(c)(1)(A)(ii)(1).    In addition, TILA requires that the information be presented in a certain tabular format, referred to as the "Schumer Box," because of then-Representative Charles Schumer's role in sponsoring the amendment that created that requirement.  *See id.* §§ 1632(c), 1637(c)(1)(A).

These precise standards in TILA are given even greater specificity through Regulation Z, the implementing rules and requirements promulgated by the Federal Reserve Board.  Regulation Z mandates that open-ended credit disclosures must be made "clearly and conspicuously" to consumers.  12 C.F.R. § 225(a)(1).  Section 226.5a of Regulation Z addresses what this means in the context of credit card applications and solicitations, requiring that certain terms and conditions—such as applicable fees—must be included in the Schumer Box.  *See* 12 C.F.R. § 226.5a(2)(i).  The Federal Reserve Board issued regulations that set out exactly what forms of disclosure are necessary in order for terms to have been disclosed "clearly and conspicuously" for purposes of Regulation Z and TILA.

Indeed, the Federal Reserve promulgated amendments to Regulation Z on the eve of the time period relevant to the FTC's Complaint that approve of

precisely the practices now challenged by the FTC as allegedly in violation of § 5 of the FTC Act.  *See* Final Rule, Truth in Lending, 65 Fed. Reg. 58903-01, 58905 (Oct. 3, 2000).  The amendments establish in painstaking detail the disclosures that were legally required.  The FTC does not dispute that the credit card materials it challenges in this case complied at all times with the requirements of TILA and Regulation Z.

Indeed, the most recent disclosure proposals and consumer studies by the Federal Reserve Board further establish that the credit card materials challenged by the FTC have been at the forefront of industry best practices with respect to disclosures.  Specifically, these materials already comply—and have for ***nearly four years***—with even the most recent proposals for new credit card disclosures made by the Federal Reserve Board as proposed amendments to Regulation Z. Obviously, the law cannot be interpreted to require in the past what regulators have only recently proposed but have not yet adopted for the future.  In light of this, it is difficult to understand how the programs could be alleged to have violated past laws when they included disclosures that went well beyond the requirements of existing regulations.

**B.   The Credit Card Products Issued By The Bank.**

11

The FTC's allegations in this case primarily involve credit cards solicited and issued by Columbus Bank & Trust (the "Bank"), for which CompuCredit provided services as an independent contractor. The FTC refers in the Complaint to three credit card products that were issued by the Bank: the Aspire Little Rock Visa, the Aspire Core Visa, and the Majestic Visa. (Compl. ¶¶ 16, 41, 59.) The Bank issued these credit cards and owned the accounts. The credit card solicitations at issue were prepared for and on behalf of the Bank, and they were reviewed and approved by the Bank and its outside compliance counsel before they were sent to consumers. CompuCredit provided services on behalf of the Bank relating to marketing, account administration, and customer service, and these services were at all times subject to the approval, oversight, and control of the Bank. (*See id.* ¶ 13.) In addition, pursuant to its contract with the Bank, CompuCredit purchased the receivables from these accounts on a daily basis.

At all times relevant to the FTC's case, the credit card materials provided clear and redundant disclosures, provided numerous times throughout the solicitation process and before activation of any card, which complied with all applicable laws and ensured that consumers were fully informed regarding fees, credit terms and available credit. The terms and conditions of the Bank's credit cards, including the fees, were disclosed over and over again to consumers from

12

the initial solicitation and throughout the activation process.  With respect to the Aspire Little Rock Visa, for instance, these disclosures include: (1) disclosures in the initial solicitation package, including the cover letter, the summary of credit terms, and the terms of offer; (2) the acceptance certificate, in which consumers affirm that they have read, understand and accept the summary of terms and terms of offer; (3) the fulfillment materials, which are received separately, prior to activation and include disclosures on the card carrier, in another summary of credit terms, and in the cardholder agreement; (4) the requirement that consumers pay $20 in order to activate the card, providing added assurance that they are aware of the card's terms and applicable fees; and (5) the receipt of a first billing statement, also typically prior to card activation, which again details all applicable fees and their impact on available credit.

The FDIC was no stranger to these marketing materials.  In fact, the FDIC regularly reviewed the marketing materials that the FTC challenges in this case and repeatedly found that the materials complied with all applicable laws and regulations.  The FDIC conducted regular on-site, full-scope examinations and visitations of the Bank that included extensive reviews of the Bank's solicitation and marketing activities.  The FDIC also conducted reviews of CompuCredit relating to the services it provided on behalf of the Bank.  Furthermore, the

marketing materials were the subject of numerous reviews over the entire relevant time period by the FDIC's Consumer Response Center, which repeatedly and consistently advised consumers, the Bank and CompuCredit in writing that they were in full compliance with applicable consumer protection laws.  Indeed, the FDIC informed consumers not only that the fees and terms were fully and properly disclosed, but that the use of the card constituted acceptance of the terms and conditions of the credit card program.  The FDIC's past reviews uniformly found that the credit card programs were in full compliance with all applicable laws.

Notwithstanding this history of compliance, on June 10, 2008, the FDIC initiated administrative proceedings against CompuCredit.  *See In re CompuCredit Corporation*, Notice of Charges for an Order to Cease and Desist and for Restitution; Notice of Assessment of Civil Money Penalties, FDIC-08-139b, 140k ("Notice of Charges") (Ex. B).)  The FDIC alleged that the solicitation materials for the credit card programs violated § 5 of the FTC Act.  (*See, e.g.*, *id.* ¶ 7.)  The FDIC also brought administrative proceedings against two of the banks on whose behalf CompuCredit provided services.  (*See In re First Bank of Del. & CompuCredit Corp.*, Notice of Charges for an Order to Cease and Desist and for Restitution; Notice of Assessment of Civil Money Penalties, FDIC 07-256b, 257k (Ex. C); *In re First Bank & Trust & CompuCredit*, Notice of Charges for an Order

14

to Cease and Desist and for Restitution; Notice of Assessment of Civil Money Penalties, FDIC 07-228(b), 260k (Ex. D).)  The FDIC also entered into a consent order with the Bank.  (*See In re Columbus Bank & Trust*, Order to Cease and Desist, FDIC-08-033(b); 08-034k (Ex. E).)  On the same day, the FTC filed its Complaint against CompuCredit in this Court, putting forward the same factual allegations and the same legal theories as the FDIC, and seeking the same restitution remedy on behalf of the same consumers.

## LEGAL STANDARDS ON A MOTION TO DISMISS

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must grant a motion to dismiss when it lacks jurisdiction over the subject matter of a dispute.  *Badier v. Gonzalez*, 475 F. Supp. 2d 1294, 1296 (N.D. Ga. 2006).  Subject matter jurisdiction is conferred and defined by statute.  *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000).  "It is the plaintiff's burden both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged, or if inquiry be made by the court of its own motion, to support the allegation."  *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938)).

The Court is not constrained by the pleadings in determining whether there is no subject matter jurisdiction.  Because the issue of jurisdiction is so critical to

15

the proceedings, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1990) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

## ARGUMENT

For more than two hundred years, Congress has maintained an extensive regulatory regime over the banking system. *See M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 401–02 (1819). From the Nineteenth Century to the present, the federal banking agencies have had "broad powers to conduct bank examinations and to declare national banks insolvent." *See Sinclair v. Hawke*, 314 F.3d 934, 940 (8th Cir. 2003). In the time since, Congress granted banking agencies power to issue cease and desist orders. *See id.* But this regulatory authority has always been subject to carefully defined substantive standards and procedural requirements.

As discussed, the FTC's lawsuit directly challenges this comprehensive regulatory regime. In this case, the FTC is trying to make an end-run around a long-settled exemption in its own jurisdiction in an attempt to regulate the activities of banks. *See* 15 U.S.C. § 45(a)(2). Ironically, the FTC seeks to regulate activities—the credit card disclosures of banks—that are particularly subject to exclusive, specific and pervasive regulation by federal banking regulators under

16

express authority granted by Congress. Moreover, the FTC's unprecedented lawsuit would require this Court to exceed the limits of its own authority and issue rulings relating to matters with respect to which Congress has explicitly withdrawn jurisdiction from courts. *See* 12 U.S.C. § 1818(i)(1). As discussed below, the law clearly compels dismissal of this case.

## I.   UNDER § 5 OF THE FTC ACT AND THE BANK SERVICES COMPANY ACT, THE FTC LACKS AUTHORITY TO ASSERT CLAIMS REGARDING BANKS' CREDIT CARD SOLICITATIONS.

### A.   The FTC Lacks Jurisdiction In This Case.

Under the plain language of the BSCA, activities performed on behalf of a bank by a bank services provider are subject to regulation "to the same extent" as if they "were being performed by the depository institution itself on its own premises." 12 U.S.C. § 1867(c). The BSCA provides, in relevant part:

> ***[W]henever a depository institution that is regularly examined by an appropriate Federal banking agency,*** or any subsidiary or affiliate of such a depository institution that is subject to examination by that agency, ***causes to be performed for itself, by contract or otherwise,*** any services authorized under this chapter, whether on or off its premises -- (1) ***such performance shall be subject to regulation and examination by such agency to the same extent as if such services were being performed by the depository institution itself on its own premises.***

*Id.* (emphasis added). This provision makes clear that the comprehensive system of federal regulation of banking activities continues to govern those activities, even

when they are performed on behalf of banks by service providers.  This ensures that the activities of banks—whether performed by banks on their own premises or by third-parties pursuant to a contract—are subject to uniform federal regulation and oversight, administered by the relevant banking regulator.

The FTC acknowledges in its Complaint that the challenged conduct consists entirely of services that CompuCredit provided on behalf of banks "[t]hrough contractual arrangements with various banks."  (Compl. ¶ 11.)  The Complaint also acknowledges that these services are performed on behalf of, and under the supervision of, banks: the "banks with which CompuCredit has contracted have been the issuers of the credit cards and have had authority to review and approve the credit cards' terms and conditions, underwriting and credit criteria, and solicitation materials."  (*Id.* ¶ 13.)  Further, the FTC also recognizes that the "banks with which CompuCredit has contracted are supervised by various federal banking agencies, including but not limited to the Federal Deposit Insurance Corporation …," (*Id.* ¶ 11.)  As set forth in its Complaint, the FTC acknowledges that it is challenging the activities of banks, performed on behalf of the banks by their contractor CompuCredit, with regard to credit cards issued by the banks.

18

Section 5 and the BSCA leave no room for regulation of banking activities by the FTC.  While the FTC has general enforcement authority with respect to federal consumer protection laws, it is undisputed that "its authority does not extend to national banks and a number of financial institutions."  Frederic J. Bendiemer, *Applicability of Section 5 of the FTC Act to Nat'l Banks*, 22 ANN. REV. OF BANKING & FIN. L. 189, 190 (2003).  The FTC Act expressly excludes the activities of banks from the FTC's jurisdiction.  *See* 15 U.S.C. § 45(a)(2) ("The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations, ***except banks*** … [from] unfair or deceptive acts or practices in or affecting commerce.") (emphasis added).  Indeed, this exclusion from the FTC's § 5 jurisdiction has been an element of the FTC Act since its enactment.  As a result of this exclusion, the FTC has no statutory authority to bring an enforcement action: "the FTC simply does not have jurisdiction over these entities."  *The Broad. Team, Inc. v. FTC*, 429 F. Supp. 2d 1292, 1298 (M.D. Fla. 2006) (citing *Nat'l Fed'n of the Blind v. FTC*, 303 F. Supp. 2d 707, 717 & 718 n.6 (D. Md. 2004)).  Indeed, the Supreme Court has recognized "the fact that banks were already subject to extensive federal administrative controls" as the apparent justification for excluding them from the FTC's otherwise broad authority.  *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 337 n.11 (1963) (citing *T.C. Hurst & Son*

19

*v. FTC*, 268 F. 874, 877 (E.D. Va. 1920)).  Under the BSCA, even when these activities are delegated by banks to service providers, they remain subject to this well-established system of banking regulation.

**B.     The FTC's Own Administrative Law Judge Has Held That, Under The Terms Of The BSCA, The FTC Lacks Jurisdiction Over Bank Service Providers.**

Given the plain language of the BSCA and the policies underlying that statute, it is unsurprising that one of the FTC's own Administrative Law Judges held that the FTC may not regulate banking services by a bank services provider. *See In re Dillard Dep't Stores, Inc.*, Docket No. 9269, 1995 FTC Lexis 62 (Mar. 16, 1995).  In *Dillard*, the Administrative Law Judge determined that the FTC had no jurisdiction over Dillard Department Stores, Inc. because Dillard was servicing credit cards pursuant to a contract with the issuer of the cards, Dillard National Bank.  Applying the BSCA, the Administrative Law Judge reasoned that "[s]ince Dillard's is providing a service to a national bank … and the performance of those services by Dillard's is subject to regulation and examination as if those services were 'performed by the bank itself …,' the OCC has jurisdiction over Dillard's activities on behalf of [the OCC regulated bank]." *Id.* at *8.  In other words, when the service provider performed activities on behalf of the bank, it could not be subject to the FTC's jurisdiction.

20

Notwithstanding the decision in *Dillard*, the FTC has ignored both Section 5 and the BSCA and brought its lawsuit against CompuCredit in this Court. In order to do so, the FTC will urge the Court to overlook the reasoning of the FTC's own Administrative Law Judge in *Dillard*. Instead, the FTC will likely try to point to two cases (one of which predated *Dillard* and both of which are inapplicable) to support its assertion of jurisdiction over the activity of banks performed by service providers. *See FTC v. Am. Standard Credit Sys., Inc.*, 874 F. Supp. 1080 (C.D. Ca. 1994) ("*ASCS*"); *Minn. v. Fleet Mortgage Corp.*, 181 F. Supp. 2d 995 (D. Minn. 2001). As explained below, these cases are plainly distinguishable and provide no support for the FTC's arguments. In fact, the cases involve such different factual and legal issues that neither decision even ***mentions*** the BSCA, which is the basis for the decision in *Dillard* and also the valid ground for dismissal in this case.

The *ASCS* case, decided before *Dillard*, did not involve the BSCA, which was not raised or at issue. The defendants were a third-party telemarketer and its corporate officers, who arranged a "900" number for consumers to call in order to receive credit card applications. *See* 874 F. Supp. 1083–85. The court there found that ASCS was not acting on behalf of the issuing bank. *See id.* at 1086. In contrast, CompuCredit's performance of the challenged activities at issue on behalf of banks pursuant to contracts is not disputed. In fact, the FTC's Complaint

21

against CompuCredit involves only activities that the FTC agrees are activities performed on behalf of banks by CompuCredit.  (*See* Compl. ¶ 11.)

The *Fleet* case also did not involve the BSCA, and the facts and reasoning of that case are not remotely applicable here.  In *Fleet*, the state of Minnesota brought an action against Fleet Mortgage Company ("FMC") under the Telemarketing Sales Rule, a series of telemarketing restrictions promulgated by the FTC.  16 C.F.R. §§ 310, *et seq*.  FMC argued that Minnesota had no authority to enforce the FTC Act because, as a subsidiary of Fleet National Bank, FMC was effectively a bank and therefore outside the FTC's jurisdiction.  *Fleet*, 181 F. Supp. 2d at 998.  The court held that Minnesota had authority to enforce the FTC regulation pursuant to § 133 of the Gramm-Leach-Bliley Act ("GLBA"), a federal statute that expressly states that certain banking subsidiaries "shall not be deemed to be a bank … for purposes of any of the provisions applied by the Federal Trade Commission under the Federal Trade Commission Act."  *Id.* (quoting GLBA, Pub. L. No. 106-102, 1113 Stat. 1383, Title I § 133(a) (1999)).

It bears emphasis that the decision in *Fleet* was based on § 133(a) of the GLBA, a provision that specifically applies to bank subsidiaries and other related companies that are corporate relatives of banks.  Because § 133(a) deals with ownership and control of companies related to banks, it has no application here.

22

But § 133(a) demonstrates that, when Congress found it necessary to amend the federal banking laws to adjust to changed circumstances or to subject parts of the banking system to the jurisdiction of other regulatory agencies, it has done so expressly, through statutory amendments.  Consistent with this principle, CompuCredit submits that the Court should follow the BSCA and the reasoning adopted by the FTC's own Administrative Law Judge, and dismiss the Complaint against CompuCredit.  Under § 5 of the FTC Act and under the plain terms of the BSCA, the FTC lacks authority to bring this lawsuit against CompuCredit.

Ironically, the FTC seeks to usurp regulatory authority over banking activities in an area—credit card disclosures—that has especially been the subject of pervasive, very specific and thorough regulation by banking regulators pursuant to express Congressional authority.  As discussed, credit card marketing materials are subject to the specific provisions of Regulation Z, promulgated by the Federal Reserve Board pursuant to TILA.  Indeed, the Federal Reserve Board has proposed amendments to Regulation Z, which are currently subject to an ongoing comment period, pursuant to the applicable regulatory process.  *See* Notice Regarding Proposed Rule, Fed. Reserve System, Unfair or Deceptive Acts or Practices, 73 Fed. Reg. 28904 (May 19, 2008).  The FTC plainly has no authority to supplant the banking regulators and bring this case attacking bank credit card disclosures.

## II.    UNDER THE FINANCIAL INSTITUTION SUPERVISORY ACT, THE COURT LACKS JURISDICTION OVER THE FTC'S CLAIMS.

This case must also be dismissed for the separate reason that federal banking law expressly withdraws jurisdiction from the Court in this case.  Indeed, the FTC's case directly implicates the jurisdictional bar enacted by Congress in § 1818(i)(1) because it brings the *same claims* relating to the *same activities of banks* that have been brought by the FDIC against the banks and CompuCredit in the administrative process.  There can be no doubt:  this case will directly and continually impact the FDIC's administrative process.  This, standing alone, requires dismissal of this case given clear Supreme Court precedent, the uniform holding of federal courts, and the consistent position of federal banking regulators, including the FDIC.  In fact, the Court needs to look no further than § 1818(i)(1) for a clear, independent and sufficient basis for dismissal of this case.

### A.    Section 1818(i)(1) Precludes The Court From Affecting The Issuance Or Enforcement Of A Notice Or Order By The FDIC.

As part of the comprehensive regulatory structure established in § 1818 of the Financial Institutions Supervisory Act ("FISA"), § 1818(i)(1) withdraws jurisdiction from courts "*to affect … the issuance or enforcement of any notice or order* under any such section or to review, modify, suspend, terminate, or set aside any such notice or order."   12 U.S.C. § 1818(i)(1) (emphasis added).   This

provision is an essential part of the comprehensive regulatory structure established by FISA: "Congress completed the scheme by explicitly precluding jurisdiction in any situation except where it had specifically provided for a particular court to exercise jurisdiction." *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 513 (10th Cir. 1994). Subject to certain exceptions that are plainly not applicable in this case, "Congress has emphatically stated that, no court shall have [the] jurisdiction to affect … the issuance or enforcement of any notice or order" issued under § 1818. *Leuthe v. Office of Fin. Inst. Adjudication*, 977 F. Supp. 357, 362 (E.D. Pa. 1997) (quoting *First Nat'l Bank of Scotia v. United States*, 530 F. Supp. 162, 167 (D.D.C. 1982)). As the Supreme Court has recognized, "in FISA Congress has spoken clearly and directly: '*[N]o court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any [Board] notice or order under this section.*'" *Bd. of Governors of the Fed. Reserve Sys. v. Mcorp Fin., Inc.*, 502 U.S. 32, 44 (1991) (citing 12 U.S.C. 1818(i)(1) (emphasis and alterations in original)).

The federal courts have repeatedly affirmed that jurisdictional bar in § 1818(i)(1) should be given the broad effect that its plain terms require. While the bar applies to a proceeding that might interfere with an enforcement action, § 1818(i)(1) "is not restricted to precluding judicial review which would interfere

25

with an ongoing administrative proceeding." *Hindes v. FDIC*, 137 F.3d 148, 164 (3d Cir. 1998). For example, § 1818(i)(1) precludes courts from hearing cases that might "affect" even closed proceedings. *See id.* at 164. Indeed, the bar extends even to administrative proceedings that have not yet been filed. *See also Bd. of Governors of the Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 999 (5th Cir. 1994) ("The fact that no administrative action was pending when [plaintiffs] filed the [district court] action is irrelevant to this determination.").

In any case, the FDIC has expressly invoked its § 1818 authority to initiate three separate enforcement proceedings against CompuCredit (and the banks for which CompuCredit performed services), raising § 5 claims against the banks and CompuCredit. (*See In re CompuCredit Corporation*, Notice of Charges (Ex. B); *In re 1st Bank of Del. & CompuCredit Corp*, Notice of Charges (Ex. C); *In re 1st Bank & Trust & CompuCredit*, Notice of Charges (Ex. D).) By these actions, the FDIC has invoked its authority to regulate banking activities, seeking to enforce § 5 of the FTC Act. Although CompuCredit vigorously disputes the FDIC's allegations and claims, and has asserted numerous defenses, it will defend itself in the administrative process established by Congress for resolving such disputes. The FTC's Complaint covers the same matters raised by the FDIC in the

26

administrative proceeding.  That is more than enough to preclude jurisdiction over this lawsuit against CompuCredit given the unambiguous text of § 1818(i)(1).

**B.     The FTC Would Require The Court "To Affect" The FDIC's Proceedings Against CompuCredit And The Banks.**

If the FTC is allowed to proceed with its claims in this case—claims premised on the exact same conduct at issue in the FDIC enforcement proceedings, and purporting to apply the same legal framework to that conduct—this Court's resolution of the action will inevitably and directly *affect*, on an ongoing basis, the FDIC's proceedings.  The word "affect," as used in § 1818(i), is properly understood to have its common and natural meaning—"to produce an effect on; to influence in some way."  Black's Law Dictionary (8th Ed. 2004).  The precedent applying § 1818(i) reinforces the broad construction of the word "affect" as it is used in the statute.  The FTC's action here clearly falls well within this statutory prohibition.  In fact, it is hard to imagine how this lawsuit could not repeatedly and constantly "affect" the FDIC's administrative proceedings.

The FTC agrees that the FDIC proceedings involve the same factual allegations as those at issue here.  The FTC's Complaint and the FDIC's Notices address the same banks' credit card programs.  Even a cursory comparison of the FTC's Complaint with the FDIC's Notices shows that the allegations relating to each program are the same.  The FTC does not dispute this point.  In fact, the FTC

27

has disclosed the administrative proceedings as "Pending Related Cases" in the Joint Preliminary Report and Discovery Plan they have submitted to the Court. (*See* Joint Prelim. Rpt. & Discovery Plan at 5 (July 14, 2008) (Docket No. 36).)

Nor does the FTC dispute that its claims are based on the same legal theories as the Notices filed by the FDIC. Each of the four counts set forth against CompuCredit in the FTC complaint alleges "a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a)." Compl. ¶¶ 85 (Count I), 88 (Count II), 91 (Count III), 94 (Count IV). *Id.* at ¶ 95. That is the same central legal theory underlying each of the Notices the FDIC issued to CompuCredit in the pending enforcement proceedings. The FTC has made one point perfectly clear: it has brought the same case to this Court that the FDIC is currently proceeding with in the administrative process.

Given the FTC's clear purpose, it cannot be disputed that the FTC's lawsuit will certainly impact and interfere with the FDIC's pending administrative proceedings against the banks and CompuCredit. On a very basic level, for example, if this Court were to hear the FTC action, it would necessarily make findings of fact and conclusions of law on issues squarely presented in the administrative proceedings. To the extent that this Court's findings and conclusions would be given preclusive effect in the administrative proceedings, the

28

lawsuit would plainly "affect" and even displace them. Indeed, there would likely be collateral litigation before the Administrative Law Judge and in this Court concerning the effect of this Court's rulings in the administrative proceedings, and *vice versa*. Therefore, this case not only will "affect" the ongoing administrative process, but threaten to replace it entirely. It is difficult to imagine a more direct affront to § 1818(i)(1), or a clearer case for dismissal under that provision.

The Court should not allow the FTC to circumvent the detailed procedural requirements of § 1818. As the Court of Appeals for the Fifth Circuit has noted, "[s]ection 1818 as a whole provides a detailed framework for regulatory enforcement and for orderly review of the various stages of enforcement; and § 1818(i) in particular evinces a clear intention that this regulatory process is not to be disturbed by untimely judicial intervention." *Groos Nat'l Bank v. Comptroller of the Currency*, 573 F.2d 889, 895 (5th Cir. 1978). Wherever "there exists a special statutory review procedure, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." *Leuthe*, 977 F. Supp. at 362. By seeking to raise before this Court the same issues under review in the pending FDIC enforcement proceedings, the FTC is attempting to circumvent the administrative process established by

29

Congress. Such interference, particularly where the FTC has no authority to bring the case in the first place, is simply not permitted under § 1818(i)(1).

## III. THIS LAWSUIT WOULD LEAD TO FUNDAMENTAL UNFAIRNESS IN THIS CASE AND HAVE DISRUPTIVE CONSEQUENCES FOR THE REGULATION OF THE ENTIRE BANKING SYSTEM.

The jurisdictional defects in the FTC's lawsuit are not merely of academic concern. If the case were allowed to go forward, it would have serious consequences for CompuCredit, for this Court, for the Administrative Law Judge, and for the system of banking regulation. It will also raise, on a ongoing basis, numerous difficult questions that will inextricably entangle this litigation with the competing FDIC administrative proceedings being conducted at the same time before the Administrative Law Judge. Were the Court seeking any further confirmation that Congress did not authorize the FTC to bring its lawsuit—and, in fact, sought to prevent lawsuits like the one the FTC has filed—it need look no further than the complicated mess that this parallel litigation will create when the parties, the FDIC, other interested third parties, the Administrative Law Judge, and this Court try to coordinate between the competing proceedings.

The unfair prejudice to CompuCredit is manifest—threatening the fundamental fairness of the proceedings and raising serious due process concerns. The FTC would have CompuCredit defend itself against the same claims, based on

the same factual allegations and the same legal theories, at the same time in two different forums.  In fact, the FTC and the FDIC are asking different tribunals to award the same damages, purportedly on behalf of the same consumers, at the same time.  But there is no established procedural mechanism for prohibiting the FTC and the FDIC from "forum-shopping" and asking one tribunal to second-guess the other in the event of unfavorable rulings for the government.  This lack of procedural standards and protections raises serious concerns involving CompuCredit's due process rights.  Congress, for its part, has not addressed these issues because it had never contemplated that a lawsuit like the FTC's would go forward at all.  Instead, as detailed above, it expressly prohibited such lawsuits.

There is also a significant risk that CompuCredit will be subjected to inconsistent rulings and conflicting obligations if the case goes forward.  For example, the FTC's claims in this Court and the FDIC's claims in the administrative proceeding are governed by differing substantive standards.  The FTC's burden is based on the general provisions that apply under § 5; the FDIC's burden is based on the more specific provisions that apply with respect to regulation of the banks' credit card products that are at issue in this matter.  In addition, the evidentiary and procedural rules will vary between the proceedings.  Even apart from issues that go directly to the merits of the cases, there is a

31

significant risk that this lawsuit will put this Court in the position of revisiting the Administrative Law Judge's decisions concerning the admission of evidence, the relevance of expert testimony, and numerous other issues—or *vice versa*, depending on the timing of each tribunal's consideration of these issues.  The result will be a wasteful and chaotic process that respects neither CompuCredit's rights as a defendant nor the time and attention required of this Court and the Administrative Law Judge.

Moreover, allowing this lawsuit to proceed will raise serious questions about the required involvement of other necessary parties to the FTC's lawsuit, including the banks and the FDIC itself.  It bears repeating that this case relates to credit cards solicited and issued by banks, and to fees charged by banks to the accounts of the bank's cardholders.  These banks would clearly be necessary parties to this litigation if it is allowed to go forward.  However, the FTC will assert that it cannot proceed against the banks in this Court because it lacks authority to do so, as detailed above, pursuant to the well-settled statutory exclusion of banks from the FTC's jurisdiction.  And there is little doubt that the FDIC will assert that it cannot be a party to this suit because the Court does not have jurisdiction over it for these purposes given § 1818(i)(1).  But the inability to join necessary parties is itself a sufficient basis to dismiss the FTC's suit.  These insurmountable complications all

32

arise from the FTC's flawed strategy of bringing this redundant case solely in an attempt to expand its authority under novel theories of jurisdiction that are clearly foreclosed by the law.

While the unfair prejudice to CompuCredit and the procedural morass into which the FTC would pull this Court should be proof enough that this lawsuit does not belong here, the potential for disruption of the federal regulatory system for banks also counsels strongly in favor of dismissal.   Congress established a comprehensive regulatory regime for oversight of the banking system.   When Congress considered it necessary to include the activities performed on behalf of banks by non-bank service providers within that regulatory regime, it enacted the Bank Services Company Act to bring about that change.   Further, to avert inconsistent or conflicting decisions between the Courts and the federal banking agencies, Congress enacted § 1818(i)(1) to preclude the courts' jurisdiction.

The FTC is asking the Court to ignore that regulatory regime, the comprehensive array of statutes and regulation and guidance that are based upon it, and the FTC's own clear lack of statutory authority.  This lawsuit asks the Court to impose a different set of standards and a different source of regulation, contrary to the unambiguous intent of Congress as expressed in decades of banking statutes as

well as the FTC Act.  CompuCredit respectfully submits that the Court should reject that invitation and asks that the Court dismiss the FTC's claims.

## CONCLUSION

For the foregoing reasons, CompuCredit Corporation respectfully asks that the Court dismiss the Federal Trade Commission's claims against it.

Dated:  July 21, 2008                                Respectfully Submitted,

                                                     /s/Sarah M. Shalf

Pat A. Cipollone                                     Jeffrey O. Bramlett
Email: *pcipollone@kirkland.com*                     Georgia Bar No. 075780
Daniel T. Donovan                                    Email:  *bramlett@bmelaw.com*
Email: *ddonovan@kirkland.com*                       Michael B. Terry
Rebecca R. Anzidei                                   Georgia Bar No. 702582
Email: *ranzidei@kirkland.com*                       Email: *terry@bmelaw.com*
Michael F. Williams                                  Sarah M. Shalf
Email: *mwilliams@kirkland.com*                      Georgia Bar No. 637537
KIRKLAND & ELLIS LLP                                 Email: *shalf@bmelaw.com*
655 Fifteenth Street, N.W.                           BONDURANT, MIXSON & ELMORE, LLP
Washington, D.C.  20005                              1201 W. Peachtree Street, N.W., Suite 3900
Tel:  (202) 879-5000                                 Atlanta, GA  30309
Fax: (202) 879-5200                                  Tel:  (404) 881-4100
                                                     Fax: (404) 881-4111

                                                     Michael J. Bowers
                                                     Georgia Bar No. 071650
                                                     Email:  *mbowers@balch.com*
                                                     T. Joshua R. Archer
                                                     Georgia Bar No. 021208
                                                     Email: *jarcher@balch.com*
                                                     BALCH & BINGHAM LLP
                                                     30 Ivan Allen, Jr. Boulevard, N.W., Suite 700
                                                     Atlanta, GA 30308
                                                     Tel:  (404) 261-6020
                                                     Fax: (404) 261-3656

*Attorneys for Defendant CompuCredit Corporation*

35

Of Counsel:
Brian C. McCormally
Robert M. Clark
Howard Cayne
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004-1206
Tel: (202) 942-5000
Fax: (202) 942-5999

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this document was prepared in Times New Roman 14 point font.

/s/Sarah M. Shalf
Sarah M. Shalf

37

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing

Memorandum of Points and Authorities in Support of CompuCredit's Motion to

Dismiss with the Clerk of Court using the CM/ECF system which will

automatically send email notification of such filing to the following attorneys of

record:

> Chris M. Couillou, Esq.
> Email: *ccouillou@ftc.gov*
> Cindy A. Liebes, Esq.
> Email: *cliebes@ftc.gov*
> Federal Trade Commission
> Atlanta Regional Office
> 225 Peachtree Street
> Suite 1500
> Atlanta, GA  30303
>
> Mark L. Glassman, Esq.
> Email: *mglassman@ftc.gov*
> Gregory A. Ashe, Esq.
> Email: *gashe@ftc.gov*
> Leah E. Frazier
> Email: *lfrazier@ftc.gov*
> Federal Trade Commission
> 600 Pennsylvania Avenue, NW
> Mail Stop NJ-3158
> Washington, D.C. 20580

I hereby certify that a copy of the foregoing Memorandum of Points and

Authorities in Support of CompuCredit's Motion to Dismiss and Notice of

38

Electronic Filing was served via first class mail upon the following non-CM/ECF

participants:

>David M. Wiese, Esq.
>Katherine M. Worthman, Esq.
>Federal Trade Commission
>600 Pennsylvania Avenue, NW
>Mail Stop NJ-3158
>Washington, D.C. 20580

This 21st day of July, 2008.

/s/ Sarah M. Shalf

Sarah M. Shalf